**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

IN RE:

SALVADOR ROVIRA MARTINO                    CASE NO. 05-08770 BKT

                                           CHAPTER 7

           Debtor                          ADVERSARY NO. 06-00067

HECTOR MUÑIZ AND SONIA CRESPO,
IN REPRESENTATION OF THEIR
MINOR SON MOISES MUÑIZ CRESPO

           Plaintiffs
              V.

SALVADOR ROVIRA MARTINO                    FILED & ENTERED ON 11/16/2007

           Defendant

**OPINION AND ORDER**

This case came before the court for a trial on the complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727. Plaintiffs are unsecured creditors of the estate having obtained a judgment in the United States District Court for the District of Puerto Rico on June 10, 2002, against Debtor/Defendant, an obstetrician.  The Court held a one-day trial on November 6, 2007, at which the testimony of two witnesses was heard and twenty exhibits were admitted.  This Court having examined the complete record of the case, observed the candor and demeanor of the witnesses, and considered the arguments of counsel, makes the following findings of fact and conclusions of law.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding

in accordance with 28 U.S.C. §157(b).

The following facts are undisputed by the parties.  On or about May 31, 2000, Debtor bought fifty percent (50%) interest in a property located in Urbanización Paseo del Parque in Cupey, Puerto Rico (hereinafter "Los Paseos property") for his daughter. The house was purchased with the daughter's consensual partner, Mr. Manuel Molina Merle for the price of $790,000.00.  Defendant testified in court that Mr. Molina Merle contributed $100,000.00 to the sale, which he borrowed from Defendant's father-in-law, Jose Rodriguez Gómez. On or about November 16, 2001, Defendant purchased from Mr. Molina Merle the remaining 50% of home for $474,841.64.  Around that same time, Defendant obtained a mortgage from Scotiabank for $787,200.00 with mortgage payments of $5,776.18 encumbering the Los Paseos property.  On February 2, 2002, a complaint was filed by Plaintiffs before the United States District Court for the District of Puerto Rico. Judgment was entered against Defendant on June 10, 2002 for $1,790,000.00.  On or about the same time, mortgage payments on the Los Paseos property were discontinued. On August 22, 2003, Defendant executed a note and mortgage for $200,000.00 against the Los Paseos  property. Both Defendant and his spouse testified at trial that this note was turned over to Defendant's brother in law, Oscar Rodriguez Crespo, as security for a series of loans given to them beginning in 1988/1989 and continuing for approximately five to six years.  Defendant's wife testified that in 2003 she transferred the ownership of the house she shared with Defendant in Mayaguez along with two additional properties located in Patillas into a trust where she is the trustee and their two children are the beneficiaries.  Defendant took out a mortgage in the amount of $400,000.00 on August 28, 2001 encumbering the Mayaguez residence.

On November 17, 2003, Defendant filed his first bankruptcy case under Chapter 13. This case was dismissed on December 30, 2003, due to Defendant's failure to file the schedules and statement of financial affairs required by Fed. R. Bankr. P. 1007(b). On January 21, 2004, Defendant filed his second bankruptcy case under Chapter 11. This case was converted to Chapter 7 on March 12, 2004. On December 12, 2004, Scotiabank filed a motion under Section 362 for failure to pay the mortgage on the Los Paseos property. The stay was lifted on January 10, 2005. The parties stipulated that at the time of the foreclosure the Los Paseos property had a market value of $950,000.00 Debtor never responded to the lift of stay motion nor appeared at the hearing. On December 16, 2004, the Defendant's attorney filed an urgent motion stating that he had received information from Defendant's spouse that Dr. Rovira Martinó had "suffered a major heart attack or stroke."   Defendant testified at the trial that on or about this same time, his brother-in-law, Oscar Rodríguez, returned the mortgage note in the amount of $200,000.00. This second bankruptcy case was dismissed on May 19, 2005 upon motion by the Chapter 7 trustee due to Defendant's lack of cooperation with the trustee and his failure to provide requested documents and amended schedules. The present bankruptcy case was filed on September 14, 2005 under Chapter 7.  Defendant's spouse is not a debtor in this case. All three bankruptcy cases have been filed by Salvador Rovira Martinó only.

The Plaintiffs' complaint does not specifically identify under which subsections of Section 727 they seek to deny Defendant his bankruptcy discharge. However, in counsel's opening statement and in the evidence presented, it became clear that Plaintiffs were proceeding under both Section 727(a)(3) (unjustified failure to keep or preserve records), and Section 727(a)(5) (failure to explain satisfactorily a loss or deficiency of assets).  The defendant's discharge can be denied if this Court

determines that any one of the twelve specifically enumerated reasons for denial has been proven. [11 U.S.C. § 727(a)(1)-(12)]. A basic premise of a bankruptcy liquidation case is that while the debtor will ordinarily receive the benefits of discharge, creditors are entitled to fair treatment and *pro rata* access to the debtor's nonexempt property. It has been aptly observed that "complete disclosure is the touchstone in a bankruptcy case." In re Bernard, 99 B.R. 563 (Bankr. S.D.N.Y. 1989). Therefore, the expectation is that to be entitled to a discharge the debtor must deal fairly with creditors and with the court. (See, In re Tully, 818 F.3d at 110 (cited in In re Schifano, 378 F.3d 60, 66 (1st Cir.2004); Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir.1997)).

As the party requesting denial of the defendant's discharge, the plaintiff has the burden of establishing the elements of Section 727(a)(3) and (a)(5). (See, In re Watman, 458 F.3d 26, 32 (1st Cir.2006)]. The Court must construe the grounds for discharge liberally in favor of debtors and against those seeking to deny debtors their discharge. (See, In re Brown, 56 B.R. 63, 66 (Bankr.D.N.H.1985); *see also* Watman, supra at 34 (citing In re Tully, supra at 110)). Section727(a)(3) and (a)(5) do not require an element of fraud, and unlike other subsections of Section727, intent is not an element of Section727(a)(3) and (a)(5). In re Artura, 165 B.R. 12 (Bankr. E.D.N.Y. 1994).

**SECTION 727(a)(3):**

To deny the debtor his discharge under this subsection, creditor must show that the debtor failed to maintain books and records from which his financial condition could be ascertained. Neither Section 727 nor case law mandates any particular manner in which financial records are to be kept. The term "books and records" is not defined in Section 727. However, courts and creditors should not be required to speculate as to the financial history of the debtor. In re Pilavis, 244 B.R. 173

(B.A.P. 1st Cir. 2000).  In Pilavis, the BAP Panel determined that:

> "The discharge in bankruptcy inures to the benefit of the honest debtor who supplies creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." (Citing, In re Martin, 141 B.R. 986, 995 (Bankr.N.D.Ill.1992).

The adequacy of records is determined on a case by case basis utilizing various factors including the debtor's business experience, education and sophistication. In re Mart, 87 B.R. 206 (Bankr. S.D. Fla. 1988). To make out a *prima facia* case under 11 U.S.C.§727(a)(3), the objecting party must demonstrate that:

> (1) the debtor has failed to keep and maintain adequate books and records; and,

> (2) that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions. In re Cromer, 214 B.R. 87, 98 (Bankr. E.D.N.Y. 1997.

During his testimony, Defendant repeatedly stated that he had no knowledge of his finances because he relied on his spouse, Myriam Rodriguez Crespo, to handle all financial matters.  When questioned, Defendant was not aware of his annual income, had no knowledge of whether mortgage payments on the Los Paseos property were ever made, had no records to indicate when the mortgage payments were paid, and could not recall the year that his spouse placed the Mayaguez house in a trust. Defendant was unable to provide one example under which his brother-in-law, Mr. Rodriguez Crespo, lent him money, nor was Defendant aware of when the loans began. Defendant's spouse testified that no documents were ever kept as to when or how much money had been lent to them by her brother.  She further testified that her brother informed them in 2003 that they owed him exactly $200,000.00, however, no documentary evidence, such as canceled checks, were presented in

-5-

support of said amount.

Defendant's testimony leaves little doubt that adequate records were not kept regarding the various transactions surrounding the purchase and re-finance of the Los Paseos property, particularly as to the $200,000.00 mortgage note.  This lack of substantiation of Defendant's financial affairs renders this Court unable to discern Defendant's true financial condition.

**SECTION 727(a)(5):**

Pursuant to Section727(a)(5), a debtor may be denied a discharge if the debtor has failed to "satisfactorily" explain any loss of assets or deficient of assets to meet the debtor's liabilities. In re Clark, 211 B.R. 105 (Bankr. M.D. Fla. 1997).  A satisfactory explanation of a loss of assets to meet liabilities so as to preclude denial of a debtor's discharge within the meaning of Section 727 must consist of more than "vague, indefinite, and unsupported testimony." In re Blasini, 67 B.R. 373 (D. Puerto Rico, 1986).  To be "satisfactory" for discharge denial purposes, a debtor's explanation for a loss of assets must convince the bankruptcy judge. The debtor must provide an explanation which is not only supported by documentation, but which eliminates any need for the court to speculate about what happened to the assets. The debtor does not need to provide a far-reaching and comprehensive account, but must do more than offer a "vague, indefinite, and uncorroborated hodgepodge of financial transactions." The failure to offer any documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets will justify the denial of a discharge. In re Bernstein, 78 B.R. 619, 623 (Bankr. S.D. Fla. 1987). Whether a debtor's explanation for a loss of assets is satisfactory rests in the discretion of the court.

In a proceeding to deny a debtor's discharge based on a failure to satisfactorily explain a loss

or diminution of assets, the initial burden is on the party objecting to the discharge to produce evidence establishing a basis for such an objection. Thereafter, the burden shifts to the debtor to explain satisfactorily the loss or deficiency of assets.  When the Defendant was called upon to explain the disposition of the remaining equity in the Los Paseos property of approximately $200,000.00, he was unable to provide a credible and satisfactory explanation.  Eighteen (18) months after the initial purchase of the Los Paseos property, Defendant re-financed the entire mortgage providing compensation to Mr. Molina who purportedly never provided any financing for the initial purchase of the property.  According to Defendant and his spouse's testimony, this re-finance was undertaken with the understanding that the house would be sold as soon as possible but the monthly mortgage payment of $5,776.18 was to continue to be the responsibility of the daughter, Ms. Rovira Rodriguez and Mr. Molina Merle in the interim. There is no evidence that Scotiabank, who provided the financing, had any knowledge of this "assignment," nor that any financial information for Ms. Rovira Rodriguez or Mr. Molina Merle was ever provided to the mortgagor.  Neither was any evidence submitted by Defendant that any of the monthly mortgage payments were made or by whom.

Not less than six months later, in June 2002, the debtor defaulted on the mortgage payments, and in August 2003, the Defendant executed a mortgage note for the remaining equity in the property to his brother in law.  Three months later, the first bankruptcy case is filed, and one year later after Scotiabank begins foreclosure proceedings on the property, the $200,000.00 mortgage note is returned to the Defendant.  Even when viewed in the light most favorable to Defendant, the purchase and re-finance of the Los Paseos property raises  a number of red flags.  It is at best a questionable

financial transaction. The Court finds the testimony of Defendant combined with a lack of corroborating evidence to be lacking sufficient credibility and specificity to satisfactorily explain the loss of assets that occurred involving the Los Paseos property.

**CONCLUSION:**

It is the determination of this Court that Plaintiffs have proven the *prima facie* case against Defendant for both Section 727(a)(3) and (a)(5), and Defendant has failed to provide any credible or tangible evidence to refute Plaintiffs' case.  Accordingly, the discharge of debtor is DENIED.

**SO ORDERED.**

**San Juan, Puerto Rico, this 16th day of November, 2007.**

**Brian K. Tester**
**U.S. Bankruptcy Judge**

**c:     DEBTORS**
**TERESA M LUBE CAPO**
**JORGE LUIS GERENA MENDEZ**
**SERGIO RAMIREZ DE ARELLANO**